**MARTIN COUNTY v. ISAACS, Clerk of Circuit Court.**

No. 75-932 CA.

Circuit Court, Martin County.

February 9, 1976.

Stephen B. Calvert, County, Attorney, and James W. Vance, West Palm Beach, for the plaintiff.

Robert F. McRoberts, Jr. and Thomas E. Warner of McRoberts & Fenniman, Stuart, for the defendant.

Crary, Buchanan & Meginnis, Stuart, for Executive Plaza, Limited.

JAMES E. ALDERMAN, Circuit Judge.

*Declaratory judgment:* Martin County filed this suit for declaratory judgment against Louise V. Isaacs, clerk of circuit court of Martin County. The clerk in turn counterclaimed for declaratory judgment against Martin County, and in addition brought into the suit as defendants, Executive Plaza Limited, a Florida limited partnership, Albert C. Schenholm, Jr. and Joel F. Pyle, Sr., individually and as general partners of Executive Plaza Limited.

A trial was held on February 4 and 5, 1976. After considering the testimony, evidence and the arguments of counsel, the court finds as follows.

Martin County has experienced rapid growth in recent years. A population of approximately 30,000 in 1970, by 1973 had grown to an estimated 40,000. At the time of trial the population of the county was estimated to be in excess of 50,000. The county courthouse, which was adequate in the 1960's, no longer meets the functional requirements of the county. There is no real dispute that the present facilities are inadequate and seriously impair the effi-

cient operation of county government. There appears to be no practical way to remodel or renovate the existing building to meet the present and future needs of the county.

The board of county commissioners of Martin County has the duty to provide adequate facilities for the proper functioning of county government. As a temporary measure the existing courthouse has been partitioned and subdivided, with county offices crowded into various "cubbyholes." Other county and state offices, which should be in the courthouse, have been scattered around the city at different locations in leased property. These temporary measures have been both inefficient and expensive.

To remedy the situation, the board of county commissioners embarked upon the procedure which is the subject matter of this suit. The commissioners considered the various alternatives available. The county did not have sufficient funds from its current revenues to build a new courthouse or county administrative building. There was an immediate need for an additional 16,000 to 19,000 square feet of office space. The Executive Plaza building would meet the county's present need and would have additional space for future expansion. However, if this building were obtained on a straight lease basis, the county would, at the end of the term of the lease, have no equity in the building; would have paid out a great deal of money, and still be faced with the problem of acquiring additional space on a permanent basis. The commissioners therefore rejected as imprudent the option of a straight lease.

The board of county commissioners then decided to utilize the provisions of F.S. 125.031, which provide as follows —

> *"Lease or lease-purchases of property for public purposes.* — Counties may enter into leases or lease-purchase arrangements relating to properties needed for public purposes for periods not to exceed thirty years at a stipulated rental to be paid from current or other legally available funds, and may make all other contracts or agreements necessary or convenient to carry out such objective. The county shall have the right to enter into such leases or lease-purchase arrangements with private individuals, other governmental agencies, or corporations. When the term of such lease is for longer than twenty-four months, the rental shall be payable only from funds arising from sources other than ad valorem taxation. Such leases or lease-purchase arrangements shall be subject to approval by the board of county commissioners, and no such lease or lease-purchase contract shall be entered into without said approval." ,

Relying upon this statute, a document entitled "Lease Agreement with Option to Purchase between Executive Plaza, Ltd. and Martin County" was executed. Under this agreement, the Executive Plaza building was leased for a term of four years for a rent of $237,700 per year. The county was given an option to purchase the leased premises for $1,025,000. The option could be exercised at any time during the first nine months of the fourth and final year of the lease. If option were exercised, the county would receive a credit of $814,861 (representing 85.7% of the rentals previously paid) on the purchase price of $1,025,000. Therefore, if the county should exercise its option, the total amount paid for the building would be $1,160,939. Under the terms of the lease, the county would have to pay all taxes, assessments or other charges against the premises. The county was responsible for insurance and maintenance. Also, the county would have to pay any remodeling costs necessary to make the building meet the county's needs. The agreement specifically provided that any rents or other charges shall be payable only from county funds lawfully budgeted therefor and "arising from sources other than ad valorem taxation." The agreement further provided that in the event of default on the part of the county, the lessor, as its sole remedy, shall have the right to terminate the lease and re-enter and re-take possession of the leased premises.

After execution of the agreement, a county warrant for the first year's rent, in the amount of $237,700, was prepared. It was at this point that the clerk refused to sign the warrant. Her refusal to sign the warrant was based upon advice of counsel that there was a rational and substantial basis for questioning the validity of the agreement. She was specifically advised by her attorney not to sign the warrant in view of the personal liability she might incur if the draft were an unauthorized or illegal appropriation. On the other hand, the county attorney advised the county commission that the agreement was legal and valid. When this impasse was reached, the parties turned to the court for a resolution of the controversy between them.

It is not surprising that attorneys' opinions are not unanimous on the legal question here presented. F.S. 125.031 does not specifically define what is meant by "lease-purchase arrangements," and no appellate court cases dealing directly with the points raised in this case have been brought to the court's attention.

The clerk, through her counsel, argues that the agreement in question is not a "lease-purchase arrangement" and therefore does not come under the provisions of F.S. 125.031. Alternatively she contends, if the agreement is in fact a "lease-purchase arrangement," that the annual rental payment exceeds the fair rental value

of the property and is not proper.

In the court's opinion, the agreement is in fact a "lease-purchase arrangement." It provides for the lease of the property for four years with an option on the part of the county to purchase. The property involved is needed for public purposes. The term of the agreement does not exceed thirty years and the stipulated rental may be paid only from current or other legally available funds arising from sources other than ad valorem taxation. The agreement has been approved by the board of county commissioners. Under the provisions of F.S. 125.031, Martin County had the legal authority to enter into such a "lease-purchase arrangement."

The next question involves the factual issue of whether the $237,700 annual rental payment due under the terms of the agreement exceeds the fair rental value of the subject property. The evidence on this point is conflicting. After considering and weighing all of the evidence, the court concludes that the board of county commissioners did not abuse its discretion. The agreement was negotiated at arm's length for the mutual advantage of the two contracting parties. The board of county commissioners made a business judgment on behalf of Martin County. From the evidence, it appears that the county has the opportunity of obtaining for $1,160,939, a building which would cost the county in excess of $1,320,000 to build. The building can be leased immediately and the rental payments over the next four years will create an equity in the property for the county.

On the other hand, it appears that under the terms of the "lease-purchase arrangement," the county may be paying more per square foot for rent than it would if it were simply leasing the building. A different board of county commissioners might have reached a different business judgment on this agreement. The fact that individuals may disagree as to what is reasonable or unreasonable does not open the door for the court to substitute its judgment for that of the elected county commissioners of Martin County. In the absence of fraud or violation of legal duty, business judgments incident to the operation of Martin County are beyond the scope of judicial interference and are the responsibility and prerogative of the governing body of the county. In this case there has been no showing of fraud, and based upon the evidence, the court finds that there has been no violation of legal duty by the board of county commissioners. If the people of Martin County disagree with the business judgment of their elected representatives, their remedy is to be found in the ballot box.

It is therefore the finding of this court that the document entitled "Lease Agreement with Option to Purchase between Executive Plaza, Ltd., and Martin County" is a valid "lease-purchase

arrangement" pursuant to F.S. 125.031; and that Louise V. Isaacs, as clerk of the circuit court of Martin County and ex-officio clerk of the board of county commissioners, is legally obligated to sign the county warrant for the first year's rental payment.